**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| WILLIAM J. WEBB, JR., | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 23-594-CFC-LDH |
| VERONICA TILGHMAN, | ) | |
| Defendant. | ) | |

FILED
AUG 25 2026
U.S. DISTRICT COURT DISTRICT OF DELAWARE

**ORDER AND REPORT AND RECOMMENDATION**

*Pro se* plaintiff William J. Webb, Jr., who is serving a state sentence at the James T. Vaughn Correctional Center ("JTVCC"), filed this action pursuant to 42 U.S.C. § 1983. (D.I. 1). Pending before the Court are five motions which I resolve as follows: I recommend granting-in-part and denying in part Defendant Veronica Tilghman's Motion for Summary Judgment (D.I. 96); I deny without prejudice to renew Plaintiff's Motion for Leave of Court to Amend Complaint (D.I. 104); I grant-in-part Plaintiff's Motion for Extension of Time to File Proposed Amended Complaint (D.I. 105); I recommend denying Plaintiff's two Motions for Default Judgment as to John/Jane Does 1-50, Veronica Tilghman (D.I. 108, D.I. 130); and I recommend denying Plaintiff's Motion for Preliminary Injunction and Restraining Order (D.I. 127).

## I. BACKGROUND

Plaintiff's Complaint asserts § 1983 claims alleging improper interference with his mail, detailing several instances where mail was allegedly not sent or received despite his repeated inquires and requests for assistance to various individuals, including Defendant Tilghman. (*See generally* D.I. 1). The Court granted Plaintiff permission to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (D.I. 5). On November 28, 2023, the Court issued a Screening Order

dismissing all but Defendant Tilghman from this action. (D.I. 9).[1] Plaintiff moved to alter or amend the Court's November 28, 2023 Screening Order (D.I. 10) and appealed it to the Court of Appeals for the Third Circuit (D.I. 11). Plaintiff also filed a motion for a preliminary injunction (D.I. 14), motion for funds (D.I. 27), and motion for reinstatement of defendants (D.I. 31), which the Court construed as a motion for leave to file an amended complaint. The Court denied Plaintiff's motions (D.I. 17, D.I. 34) and the Third Circuit denied Plaintiff's appeal. (D.I. 30).

After Defendant Tilghman was served, she answered Plaintiff's Complaint but maintained several affirmative defenses including failure to state a claim and failure to exhaust administrative remedies. (D.I. 33). The Court entered a Scheduling Order (D.I. 35) and the parties conducted discovery. During discovery, Plaintiff filed a motion to compel (D.I. 57), a motion to appoint counsel (D.I. 41), two motions for default judgment (D.I. 43, D.I. 75), a motion to strike (D.I. 73), a motion seeking additional law library access (D.I. 42), and various motions seeking sanctions, disciplinary action, disqualification of Defendant's counsel, and return of stolen funds (D.I. 56, D.I. 78, D.I. 80, D.I. 85). The Court denied all of Plaintiff's motions. (D.I. 87). The Court granted Defendant's co-pending motion for a protective order noting that Plaintiff issued numerous discovery requests but did not substantively respond to Defendant Tilghman's first discovery request. (D.I. 87, ordering that "Defendant Tilghman need not respond to any further discovery requests from Plaintiff unless and until Plaintiff substantially responds to Defendant's initial discovery requests."). The Court granted Defendant's motion to depose Plaintiff. (D.I. 91, D.I. 92, D.I. 93). The Court denied Defendant Tilghman's motion to revoke Plaintiff's *in forma*

[1] The Screening Order also denied Plaintiff's then-pending motion for default judgment (D.I. 7) and a request for default (D.I. 8). (D.I. 9).

*pauperis* status (D.I. 63, D.I. 87).[2] The Court also granted two motions to extend the discovery deadline (D.I. 46, D.I. 51, D.I. 76, D.I. 87), which was ordered to be completed by May 14, 2025.

Defendant then filed her instant motion for summary judgment. (D.I. 96). Plaintiff did not respond to Defendant's motion before the deadline set in accordance with District of Delaware Local Rule 7.1.2, so the Court ordered Plaintiff to respond on or before September 3, 2025. (D.I. 103). Instead of responding, Plaintiff filed a motion seeking a Martinez Report (D.I. 98), a motion for sanctions against Defendant and counsel (D.I. 99), a motion for leave to amend complaint (D.I. 104), a motion for extension of time to file proposed amended complaint (D.I. 105), a motion for stay of briefing for Defendant's motion for summary judgment (D.I. 106), and a motion for default judgment as to certain Doe Defendants (D.I. 108).

On October 17, 2025, this Court stayed Plaintiff's motions for leave to amend, for an extension of time to file a proposed amended complaint, and for default judgment as to Doe Defendants until Plaintiff responded to Defendant Tilghman's motion for summary judgment, ordering Plaintiff to do so by November 28, 2025. (D.I. 115). The Court denied Plaintiff's other pending motions as lacking merit. (*Id.*). Plaintiff appealed this Court's October 17, 2025 Order to the Third Circuit (D.I. 116), and his appeal was denied (D.I. 126). Plaintiff then moved for a preliminary injunction and restraining order (D.I. 127), which Defendant Tilghman opposes.

## II. LEGAL STANDARD

A party may move for summary judgment under Federal Rule of Civil Procedure 56. Summary judgment must be granted where "there is no genuine dispute as to any material fact

---

[2] The Court denied that motion on grounds that Defendant only identified two prior cases initiated by Plaintiff that were dismissed as frivolous rather than the requisite three. (D.I. 87); *Ball v. Famiglio*, 726 F.3d 448, 455–56 (3d Cir. 2014) (citing 28 U.S.C. § 1915(9) and discussing what qualifies as a strike under the PLRA).

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the movant to demonstrate the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). "An assertion that a fact cannot be—or, alternatively, is—genuinely disputed must be supported either by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials,' or by 'showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.'" *Resop v. Deallie*, No. 15-626-LPS, 2017 WL 3586863, at *2 (D. Del. Aug. 18, 2017) (quoting Fed. R. Civ. P. 56(c)(1)(A), (B)). A factual dispute is only genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

## III. DISCUSSION

### A. Defendant's Motion for Summary Judgment

Defendant seeks summary judgment on four grounds: failure to state a claim, failure to exhaust, Eleventh Amendment immunity, and qualified immunity.

#### *a. Failure to State a Claim*

Defendant argues Plaintiff's Complaint "must be dismissed" because Plaintiff does not identify "a right, privilege, or immunity under the Constitution [that] was violated by Defendant."

(D.I. 97). Defendant's argument is based on a gross mischaracterization of Plaintiff's claim, and I accordingly recommend that summary judgment be denied.

Plaintiff's Complaint alleges that Defendant Tilghman and others interfered with his mail. Understanding the gravamen of his Complaint does not require legal jujitsu: his claim is plain and apparent from the face of the Complaint. (*See generally* D.I. 1). In her Motion for Summary Judgment, Defendant Tilghman characterizes Plaintiff's claim in a way that borders on disingenuous, arguing that the only allegation against her is that she failed to make a phone call on his behalf, and that failing to make a phone call does not state a claim under § 1983. That is a correct statement of the law, but not of Plaintiff's Complaint. Generally, "[a] document filed *pro se* is 'to be liberally construed.'" *Erickson v. Pardus*, 551 U.S. 89, 94, (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). For example, the court must "apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name." *Holley v. Dep't of Veteran Affs.*, 165 F.3d 244, 248 (3d Cir. 1999). It is not clear that one needs to liberally construe Plaintiff's Complaint to understand that he complains of mail tampering but, even if a liberal construction were required, he is entitled to it under the law.

Thus, read correctly, it is clear that Plaintiff's Complaint is not about Defendant making a phone call. Plaintiff's Complaint reflects allegations that his mail has been repeatedly tampered with, either not going out or that he is not receiving mail—including correspondence to and from his lawyer or the court. Plaintiff's Complaint states that he repeatedly informed individuals about the issues with his mail, including Defendant Tilghman, to no avail.

Because Defendant mischaracterizes Plaintiff's claim, she does not address whether interference with an inmate's mail can implicate the First and Fourteenth Amendments and thus

support a claim under § 1983.[3] It can. *See Diaz v. Palakovich*, 448 F. App'x 211, 215 (3d Cir. 2011) ("We have recognized a cause of action to address '[a] state pattern and practice . . . of opening legal mail outside the presence of the addressee inmate,' because such a practice 'interferes with protected communications, strips those protected communications of their confidentiality, and accordingly impinges upon the inmate's right to freedom of speech.'" (quoting *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006)); *Johnson v. Eme*, No. 24-11535 (RMB) (SAK), 2026 WL 1382667, at *3 (D.N.J. May 18, 2026) ("The First Amendment protects the right of prisoners to send and receive mail free from unwarranted governmental interference." (citing *Jones*, 461 F.3d at 358)); *Johnson*, 2026 WL 1382667, at *5 (recognizing that access-to-courts claim arising from alleged mail interference can implicate the First and Fourteenth Amendments); *McKinney v. Asst. Superintendent George Robinson*, No. 16-4460-FLW, 2016 WL 7189832, at *4 (D.N.J. Dec. 12, 2016) ("The assertion that legal mail is intentionally opened and read, delayed for an inordinate period of time, or stolen may state a First Amendment claim."); *Id.* at *5 ("[T]o

[3] Instead, in her answering brief, Defendant argues that "Plaintiff's claims of mail tampering were dismissed during screening," making this representation multiple times. (D.I. 120 at 2; *see also* D.I. 109 at 1, D.I. 110 at 1, D.I. 111 at 1). Nowhere does the Court's November 28, 2023 Screening Order say that or create such a result. The Court's Screening Order dismissed USPS, Delaware Department of Justice ("DDOJ"), and the "JTVCC mailroom" on immunity grounds. (D.I. 9 at 1–2). The Court dismissed without prejudice Defendants Hrivnak, Milecki, Warner, Finamore, McCloskey, and Troxler "for lack of allegations of personal involvement pleaded with particularity." (*Id.* at 2). The Court noted that allegations against Defendant McCloskey (DDOJ attorney who allegedly did not respond to appeal of Plaintiffs criminal case) and Defendant Troxler (DOC bureau chief who denied Plaintiff's grievance appeal) were non-cognizable. (*Id.* at 3). The Court did not dismiss Defendant Tilghman nor any asserted claims against her. (*Id.* at 1). Defendant appears to have accepted the effect of this Order by declining to dispute the sufficiency of Plaintiff's Complaint at the pleading stage. Instead, she filed an answer and asserted various defenses (D.I. 33), suggesting that Plaintiff's Complaint "provided sufficient notice of [his] claims." *Bhatt v. Hoffman*, 716 F. App'x 124, 127–28 (3d Cir. 2017) (citing *Simmons*, 49 F.3d at 88); *cf. Id.* at 128 (explaining that when analyzing whether a complaint complied with Rule 8 a court "has certain remedial tools at its disposal, such as striking surplusage from the complaint or excusing defendants from answering surplus paragraphs or paragraphs that do not apply to them") (citing *Hearns*, 530 F.3d at 1132).

maintain a separate Fourteenth Amendment access to the courts claim based on prison official's interference with legal mail, a Plaintiff must allege actual injury.").

Defendant moves for summary judgment for failure to state a claim because "Plaintiff cannot identify a right or privilege which was violated by Defendant and case law does not impose a duty . . . ." (D.I. 97 at 6). Plaintiff has identified a right or privilege and has claimed that Defendant violated those rights. Defendant's summary judgment motion for failure to state a claim should be denied.[4]

*b. Failure to Exhaust*

Defendant argues that Plaintiff failed to exhaust his administrative remedies before filing suit. Once again, Defendant's argument is not supported by a fair reading of Plaintiff's Complaint or his grievances.

To assert a claim for improper legal mail handling in violation of the First Amendment, an inmate first must clear the Prison Litigation Reform Act's (PLRA) proper exhaustion hurdle, which requires inmates to comply with prison regulations in exhausting all available remedies before bringing suit. *See* 42 U.S.C. § 1997e(a); *Woodford v. Ngo,* 548 U.S. 81, 93 (2006); *Williams v. Beard,* 482 F.3d 637, 639 (3d Cir. 2007); *see also Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). "[A]n inmate must exhaust [administrative remedies] irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). Exhaustion means proper exhaustion, that is, "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including

4 Defendant does not move for summary judgment on the basis that there are no material facts in dispute. Accordingly, I do not reach that issue here.

deadlines, as a precondition to bringing suit in federal court." *Woodford*, 548 U.S. at 88. Because an inmate's failure to exhaust under PLRA is an affirmative defense, *Jones v. Bock*, 549 U.S. 199 (2007), the failure to exhaust administrative remedies must plead and proven by the defendant, *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

Defendant argues that "Plaintiff admits he did not file a grievance related to Defendant's alleged conduct." (D.I. 120 at 1). That is, Defendant asserts that for Plaintiff's Complaint to properly proceed, Defendant needed to file a grievance specifically on the issue of Defendant calling the court.[5] Defendant then cites three lines of Plaintiff's deposition testimony where Defendant asked Plaintiff: "Q. Did you file a grievance related to Veronica Tilghman not calling the court?" Plaintiff responded: "A. No. I told you, I told the grievance lady, and I think I wrote Internal Affairs and never heard nothing." (*Id.*, citing D.I. 97-2 at 19:16-19). In opposing summary judgment, Plaintiff attaches the two grievances he filed.[6] Defendant addresses neither.

In the first grievance, Grievance No. 597265 filed on October 24, 2022 using Form #594, Plaintiff complains of alleged interference with his legal mail, explaining that he did not receive correspondence from the Superior Court sent to him earlier in October. (D.I. 118-1, Ex. A at 3). This grievance was returned to him "unprocessed" and he was instructed to "write the mailroom supervisor, S/Lt. Tilghman via in house mail to inquire about this." (*Id.* at 4). Both parties agree that Defendant Tilghman met with Plaintiff to discuss this grievance. (D.I. 97-2, Ex. B at 17:13; D.I. 97-3, Ex. C ¶ 6). Defendant cites no authority as to why Plaintiff's apparent compliance with

---

[5] She does not argue that Plaintiff did not properly exhaust the grievances that he did file related to the ongoing issues with his mail. Rather, she argues that he did not file a grievance on this specific issue.

[6] Plaintiff also attaches what appears to be a full copy of the deposition transcript; Defendant submitted only three pages, omitting the testimony that undermines Defendant's motion for summary judgment.

the "unprocessed" grievance form's instructions is insufficient. *See Shaw v. Mock*, No. 17-00076-MN, 2020 WL 7061042, at *4 (D. Del. Dec. 2, 2020) (denying summary judgment for failure to exhaust when defendant did not meet burden to explain why plaintiff failed to exhaust unprocessed grievance).[7]

With respect to Plaintiff's second grievance, Grievance No. 600004 filed on December 22, 2022, Plaintiff complained again about issues with his mail—in particular that he had not received correspondence from the Superior Court sent to him earlier in December. (D.I. 118-1, Ex. A at 4). He received an Informal Resolution dated January 3, 2023 listing Defendant Tilghman as the investigator. (*Id.* at 7). Defendant Tilghman wrote that she spoke with Plaintiff about his grievance, informed him that when mail gets delivered from "the post office or from state mail, it gets delivered to the inmate that same day." (*Id.*). Plaintiff appears to have rejected that resolution and obtained secondary hearing on January 10, 2023. (*Id.* at 5–6). He appears to have rejected the resolution from the secondary hearing because, on January 12, 2023, Plaintiff filed a "Grievance Appeal Form." (*Id.* at 12). On appeal, he writes that Defendant "Tilghman never contacted the Superior Court like she said she was going to" and further complained of continued mail tampering. (*Id.* at 12). The "Grievance Appeal Form" is stamped as having been received by the JTVCC Grievance Office on January 13, 2023. (*Id.*). As with the first grievance, Defendant does not address the second grievance nor introduce any authority as to why the Court should deem it insufficient.

---

[7] I observe that this Court has repeatedly noted that the "return of unprocessed grievance" instructions in use at JTVCC are "confusing at best." *Abbatiello v. Metzger*, No. 19-1317-CFC, 2021 WL 678137, at *4 (D. Del. Feb. 22, 2021) (quoting *Rahim, v. Holden*, 882 F. Supp. 2d 638, 643 (D. Del. 2012)). This Court has denied motions to dismiss and motions for summary judgment seeking relief on exhaustion grounds particularly when "unprocessed" grievances are involved. *Id.*; *Shaw v. Mock*, No. 17-00076-MN, 2020 WL 7061042, at *4 (D. Del. Dec. 2, 2020).

To the extent Defendant maintains that Plaintiff should have filed a third grievance prior to filing suit that specifically complained of Defendant Tilghman's failure to resolve Plaintiff's issue with his missing Superior Court mail, I reject that view for at least three reasons. First, Defendant does not cite any authority suggesting the Court should find Plaintiff was required to do so, particularly when his two prior grievances share a factual basis with the Complaint. "Perfect overlap between the grievance and complaint is not required by the PLRA as long as there is a shared factual basis between the two." *Riego v. Carroll*, 893 F. Supp. 2d 674, 679 (D. Del. 2012) (citing *Jackson v. Ivens*, 244 F. App'x 508, 513 (3d Cir. 2007) (citing *Woodford*, 548 U.S. at 95) ("The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance.")); *Jackson v. Ivens*, 244 F. App'x 508, 513 (3d Cir. 2007) (reversing entry of summary judgment for failure to exhaust on the grounds that grievance complaining of medical treatment did not sufficiently raise "delay of treatment" claim). Defendant does not argue that there is insufficient factual overlap between Plaintiff's grievances and his Complaint. Neither does Defendant argue that JTVCC lacked a fair opportunity to consider Plaintiff's issues as they were presented to prison officials.

Second, Plaintiff wrote specifically on his "Grievance Appeal Form" that Defendant "Tilghman never contacted the Superior Court like she said she was going to" and further complained of continued mail tampering. (D.I. 118-1 at 12). Defendant does not address Plaintiff's statement or otherwise explain why it was insufficient.

Third, even if I were to conclude that Plaintiff's as-filed grievances were somehow insufficient, Plaintiff explains that he filed multiple letters to seek additional relief. Indeed, during deposition Plaintiff testified as follows:

> Q. Did you file a grievance related to Veronica Tilghman not calling the court?

> A. No. I told you, I told the grievance lady, and I think I wrote Internal Affairs and never heard nothing.
> Q. When you say you wrote Internal Affairs, who specifically is that to?
> A. Well, I don't think he's in that capacity no more. But it would be Staff Lieutenant Orlando Dejesus. And he was the one in charge, I guess, still at that time. But I don't know when he was removed from that position.
> Q. Was he the area supervisor?
> A .No. He was Internal Affairs. He's the one that did investigations when you sent him a letter of request or report anything that's happening.
> Q. So, you sent this letter to Orlando Dejesus regarding Veronica Tilghman not calling the court on the motion. Correct?
> A. On the mail issue, the whole mail issue.
> Q. And when you did not hear anything back, did you appeal to the Warden? Did you write a letter to him?
> A. I wrote that to the Warden. And just like the other lawsuit I got pending, he never responded or denies that he received the letter. So, I don't know if he received it. At that time, it was Robert May. Just like when I was down in Georgetown, he never responded to the letter or nothing else.
> Q. And was this letter specifically about Veronica Tilghman?
> A. It was about the whole mail issue. I guess you can say she was part of it. She was the head of mailroom.
> Q. So, my question is, did you write a letter to the Unit Commander or the Warden regarding Veronica Tilghman not calling the court?
> A. I wrote a letter to the Warden about her not calling the court. At that time, I didn't know -- I just thought she was the investigator. So, the mailroom staff told me at this grievance hearing they were going to call the court and that letter was never responded to or never anything.

(D.I. 97-2 at 19:16-21:24). To the extent Defendant addresses these letters, she states, "Plaintiff admitted he did not file a grievance or submit a writing to an area supervisor or unit commander" consistent with what she represents is JTVCC policy. (D.I. 120 at 1). But, again, Defendant does not cite to any authority suggesting that Plaintiff's efforts were insufficient for exhaustion purposes.

Defendant has not met her burden to prove a failure to exhaust.[8] *Ray*, 285 F.3d at 295. Specifically, she has not met her burden to show that Plaintiff "failed to resort to administrative remedies that are "'officially on the books.'" *Cropper v. McCarthy*, No. 23-2091, 2024 WL 615520, at *2 (3d Cir. Feb. 14, 2024) (quoting *Ross v. Blake*, 578 U.S. 632, 643 (2016).). She characterizes a few lines of deposition testimony as a dispositive admission without meaningfully addressing any of Plaintiff's grievances and why she maintains they were insufficient. She introduces no legal authority that compels a decision in her favor. And she once again takes a view too narrow of Plaintiff's Complaint. Accordingly, I recommend denying Defendant's motion for summary judgment on the basis that Plaintiff failed to exhaust his administrative remedies.

*c. Eleventh Amendment Immunity*

Defendant argues that the Eleventh Amendment bars Plaintiff's claims against Defendant in her official capacity. In part, it may.

"[Section] § 1983 claims for monetary damages against a state, state agency, or a state official in his official capacity are barred by the Eleventh Amendment" unless the state waives its immunity. *Price v. Pierce*, No. 16-831-CFC, 2019 WL 156932, at *3 (D. Del. Jan. 9, 2019) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citations

---

[8] Defendant seems to place the burden on Plaintiff to disprove failure to exhaust rather than prove the affirmative defense herself. For example, after characterizing Plaintiff's deposition testimony as "admit[ting]" he did not file a grievance, she represents Plaintiff's opposition papers as taking the view that Plaintiff "did not file a grievance because he did not know Defendant was the mailroom supervisor." (D.I. 120 at 1). Defendant then states that Plaintiff "fails to show [that not knowing that Defendant was the mailroom supervisor] prevented him from submitting a grievance." (*Id.*). To accept Defendant's view "improperly places on [Plaintiff] the burden of pleading and proving exhaustion. *Shaw*, 2020 WL 7061042, at *3 (denying summary judgment on exhaustion grounds: "[defendant] argues that [plaintiff] 'did not provide evidence,' 'could not provide any detail,' and 'did not keep a copy of any of the letters,' and asks the Court to consider [p]laintiff's lack of evidence as the basis to grant summary judgment. It is, however, [defendant's] burden to plead and prove that [plaintiff] failed to exhaust all administrative remedies before seeking relief from the Court.").

omitted); *Ali v Howard*, 353 F. App'x 667, 672 (3d Cir. 2009)). "However, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." *Id.* (citing *Ex parte Young*, 209 U.S. 123 (1908). "This standard allows courts to order prospective relief, as well as measures ancillary to appropriate prospective relief." *Id.* (citing *Frew v. Hawkins*, 540 U.S. 431, 437 (2004)).

To the extent Plaintiff seeks monetary damages from Defendant Tilghman in her official capacity,[9] I agree with Defendant that they are barred. *See Price*, 2019 WL 156932, at *3 (granting summary judgment in defendant's favor on claims raised against defendants "in their official capacities . . . to the extent that [p]laintiff seeks monetary damages from them"). Nothing before me suggests the State of Delaware "has waived its sovereign immunity with regard to lawsuits of this type." *West v. Emig*, No. 13-2103 (MN), 2021 WL 1226489, at *8 (D. Del. Mar. 31, 2021). Defendant does not address Eleventh Amendment immunity in the context of prospective injunctive relief, so I do not reach that issue.

Accordingly, I recommend granting-in-part this portion of her motion and recommend dismissing claims for monetary damages against Defendant Tilghman in her official capacity.

*d. Qualified Immunity*

Defendant argues that any claims against her are barred by qualified immunity. "An official sued under § 1983 for an alleged constitutional violation is entitled to qualified immunity unless he (1) violated a constitutional right that (2) was clearly established when he acted."

---

9 Plaintiff does not make clear whether he intended to sue Defendant in both her individual and official capacities. The Complaint lists Defendant by name and job title, (D.I. 1 at 5), which "the Third Circuit has suggested may indicate an intent to sue state officials in both capacities," *Ali*, 353 F. App'x at 672.

*Stringer v. Cnty. of Bucks*, 141 F.4th 76, 85 (3d Cir. 2025); *Williams v. Sec'y Pa. Dep't of Corr.*, 848 F.3d 549, 557 (3d Cir. 2017).

Defendant is not entitled to qualified immunity at this stage. She maintains "Plaintiff has not alleged a violation of a clearly established right" because "Plaintiff's sole remaining claim in this litigation is that Defendant Tilghman failed to call the Superior Court regarding a motion." (D.I. 120 at 3-4). For the reasons discussed above in Section III(A)(a) of this Report and Recommendation, that is incorrect.

Next, Defendant argues "Plaintiff has failed to show Defendant's conduct violated a Constitutional right or Defendant's conduct was clearly unlawful at the time it occurred." (D.I. 120 at 4). But "'[t]he party asserting the affirmative defense of qualified immunity' bears the burden of persuasion on both prongs at summary judgment." *Mack v. Yost*, 63 F.4th 211, 227 (3d Cir. 2023) (*Halsey v. Pfeiffer*, 750 F.3d 273, 288 (3d Cir. 2014)). Defendant discusses qualified immunity over three sparse paragraphs between her opening and reply summary judgment briefs without citation to any authority or providing meaningful analysis. Defendant has not met her burden. *West*, 2021 WL 1226489, at *6 (denying summary judgment motion seeking qualified immunity where defendant did not meet burden to "show either that there is no genuine dispute of material fact to refute their contention that they did not violate [plaintiff's] Constitutional rights, or that the rights he asserts were not clearly defined at the time of the alleged violation").

Accordingly, I recommend denying Defendant's motion for summary judgment on the basis of qualified immunity because "it is not warranted at the summary judgment stage in this case." *Reedy v. Evanson*, 615 F.3d 197, 224 n.38 (3d Cir. 2010) ("Qualified immunity remains a viable defense, though its applicability cannot be finally determined until after the facts have been sorted out at trial.").

**B. Plaintiff's Motion for Leave to Amend Complaint and Motion for Extension of Time to File Proposed Amended Complaint**

Plaintiff seeks leave to file an amended complaint (D.I. 104) and has contemporaneously filed a motion for an extension of time to file the proposed amended complaint. (D.I. 105).

Federal Rule of Civil Procedure 15(a) provides that "the court should freely give leave when justice so requires." A district court may deny leave to amend a complaint where "it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *Lake v. Arnold,* 232 F.3d 360, 373 (3d Cir. 2000) (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)). Under District of Delaware Local Rule 15.1, "(a) A party who moves to amend a pleading shall attach to the motion: (1) The proposed pleading as amended, complete with a handwritten or electronic signature and any exhibits or attachments; and (2) A form of the amended pleading which shall indicate in what respect it differs from the pleading which it amends, by bracketing or striking through materials to be deleted and underlining materials to be added." (D. Del. LR 15.1).

Here, Plaintiff fails to submit both a proposed amended complaint and a redline comparing his proposed pleading with the Complaint. Because his motion seeking leave to amend does not comply with the Local Rules, I deny it without prejudice.[10] (D.I. 104, D.I. 105). *See McCary v. Aug.*, No. 21-911-GBW, 2023 WL 1927410, at *2 (D. Del. Feb. 10, 2023) (denying without prejudice motion for leave to amend that did not comply with D. Del. LR 15.1(a)); *Santiago v. Gray*, No. 18-814-RGA, 2019 WL 2269889, at *3 (D. Del. May 28, 2019) (denying without prejudice motion for leave to amend that did not comply with D. Del. LR 15.1(b); *Watson v. Little*,

---

[10] *See Patel v. Meridian Health Sys., Inc.*, 666 F. App'x 133, 136 (3d Cir. 2016) (treating denial of motion for leave to amend as non-dispositive).

No. 14-926-LPS, 2016 WL 963675, at *2 (D. Del. Mar. 11, 2016) (denying without prejudice motion for leave to amend to add new defendants for failure to comply with D. Del. LR 15.1)). Plaintiff's request for additional time to file an amended pleading because it "is going to be very extensive" as he proceeds through "millions of pages of documents" (D.I. 105 at 1-2) does not excuse his failure to comply with the Rules of this Court.

I am somewhat receptive to Defendant's argument that Plaintiff acts with dilatory motive given his extensive motion practice in this litigation, Plaintiff's prior failures to abide by the Local Rules, and Plaintiff's delay in seeking leave to amend after summary judgment motions were briefed. Dates for trial, however, have not yet been set and Defendant does not argue that amendment will cause prejudice.[11] Although Defendant argues amendment is futile, I do not have enough facts to make such a determination.

Accordingly, I grant-in-part Plaintiff's motion for an extension of time to file a proposed amended complaint. If Plaintiff seeks to renew his motion seeking leave to amend, he must do so within thirty (30) days of the District Court's adoption of this Order and Report and Recommendation. His papers must abide by the Local Rules.

**C. Plaintiff's Motion for Default Judgment**

Plaintiff has moved for default judgment on three prior occasions in this action, and the Court has denied each of those motions. (D.I. 9, D.I. 87). Now, Plaintiff states "[it] is time to enter a default judgment for the bad faith of Defendant's and Counsel's actions" apparently dissatisfied over having waited four months to receive deposition transcripts. (D.I. 108). He also

---

11 Defendant curiously argues that if "Plaintiff were allowed leave to amend his complaint, the current Scheduling Order would need to be vacated and reissued" (D.I. 110 at 3). But Defendant does not identify what deadlines or provisions would need to be vacated. The Scheduling Order did not establish a deadline to file amended pleadings and does not set a date for the pretrial conference or trial.

asserts that certain of his legal mail was "intercepted," allegedly impairing his ability to litigate various issues pending in state court, and seeks, *inter alia*, to have state court charges against him dismissed. (D.I. 130). Entry of default judgment is a two-step process and the first step requires entry of default. *See* Fed. R. Civ. P. 55 (a), (b). Plaintiff does not explain why failure to receive deposition transcripts is a cognizable basis to seek entry of default or default judgment.[12] Neither does he offer any basis to demonstrate that a default judgment is the appropriate vehicle to obtain relief with respect to issues pending in state court. To the extent Plaintiff seeks reconsideration of this Courts prior denials of Plaintiff's motions for default judgment, he does not explain why he is entitled to such relief. Accordingly, I recommend denying Plaintiff's motions for default judgment.

**D. Plaintiff's Motion for Preliminary Injunction and Restraining Order**

Because a preliminary injunction is an "extraordinary and drastic remedy," the movant bears the burden of making "a clear showing" of his or her entitlement to relief. *Del. State Sportsmen's Assoc., Inc. v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 198 (3d Cir. 2024) (citations omitted); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (internal citation omitted) ("[I]njunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."). To obtain relief, the moving party must show: (1) a likelihood of success on the merits; (2) they will suffer irreparable harm if the injunction is denied; (3) granting relief will not result in even greater harm to the

12 Although Defendant substantively responded to Plaintiff's prior motions seeking default judgment after she had been served, Defendant did not do so here. Instead, Defendant wrote a letter to the Court stating that, "Defendant finds no response necessary because Plaintiff is not entitled to a free copy of his deposition transcript from the Defendant." (D.I. 112).

nonmoving party; and (4) the public interest favors such relief. *Child Evangelism Fellowship of N.J. Inc. v. Stafford Twp. Sch. Dist.*, 386 F.3d 514, 524 (3d Cir. 2004) (citation omitted).

Plaintiff has not made the requisite "clear showing." Plaintiff argues he has been deprived of his "life, liberty, and property" and seeks the following relief: (a) "reversal of his Superior Court Conviction" and "Family Court Conviction," (b) reinstatement of his parental rights to his daughter, (c) compensatory damages of "$20,000 per visit where [his daughter] was falsely imprisoned" from visitation, (d) an order to enforce visitation rights, and (e) a "civil rights division filed against Lorin P. Huerta for continuously presenting false and erroneous evidence, Brady violations, and professional misconduct." (D.I. 127). He does not explain how these requests tie to the merits of his § 1983 claims predicated on alleged mail tampering. He does not explain how he will be irreparably harmed but for obtaining injunctive relief, nor does he make a showing that he is likely to succeed on the merits of his claim. *See Reilly v. City of Harrisburg*, 858 F.3d 173, 179 n.4 (3d Cir. 2017) ("[A] movant for preliminary equitable relief must meet the threshold for the first two most critical factors: it must demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not) and that it is more likely than not to suffer irreparable harm in the absence of preliminary relief.") (internal quotation marks and citations omitted).

Accordingly, I recommend denying Plaintiff's Motion for Preliminary Injunction and Restraining Order.

## IV. CONCLUSION

For the foregoing reasons, I recommend granting Defendant's Motion for Summary Judgment on grounds that the Eleventh Amendment bars Plaintiff's claims for monetary damages against Defendant in her official capacity and denying the Motion on all other grounds. (D.I. 96).

I deny without prejudice Plaintiff's Motion for Leave of Court to Amend Complaint (D.I. 104) and grant-in-part Plaintiff's Motion for Extension of Time to File Proposed Amended Complaint (D.I. 105). To the extent Plaintiff seeks to renew his motion seeking leave to amend, he must do so within thirty (30) days of the District Court's adoption of this Order and Report and Recommendation. I recommend denying Plaintiff's Motions for Default Judgment as to John/Jane Does 1-50, Veronica Tilghman. (D.I. 108, D.I. 130). I recommend denying Plaintiff's Motion for Preliminary Injunction and Restraining Order. (D.I. 127).

This Order and Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), (C), Federal Rule of Civil Procedure 72(b)(1), and D. Del. LR 72.1. The parties may file objections to this Order and Report and Recommendation within fourteen (14) days after being served with a copy of the Order and Report and Recommendation. *See* FED. R. CIV. P. 72(a) & (b)(2); *see also* FED. R. CIV. P. 6(d). Any objections to the Order and Report and Recommendation shall be limited to ten (10) pages. Any response shall be filed within fourteen (14) days thereafter and limited to ten (10) pages. The failure of a party to object may result in the loss of the right to review in the district court and the loss of certain appellate rights or the right to appellate review. *See Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987); *Equal Emp. Opportunity Comm'n v. City of Long Branch*, 866 F.3d 93, 99–100 (3d Cir. 2017); *United Steelworkers of America, AFL-CIO v. New Jersey Zinc Co.*, 828 F.2d 1001, 1006–08 (3d Cir. 1987); *Bello v. United Pan Am. Fin. Corp.*, C.A. No. 24-2052, 2025 WL 275109, at *3 n.5 (3d Cir. Jan. 23, 2025). Parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which is available on the Court's website, https://www.ded.uscourts.gov.

Date: August 25, 2026

United States Magistrate Judge